# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

SHALANA SATTERWHITE,                          **CASE NO. 1:19-CV-02690**

                   **Plaintiff,**

    **-vs-**                                **JUDGE PAMELA A. BARKER**


ASHTABULA COUNTY METROPARKS,

                **Defendant.**        **MEMORANDUM OF OPINION AND ORDER**

This matter comes before the Court upon the Motion for Leave to Amend the Complaint and Join Required Party for Just Adjudication ("Motion for Leave to Amend") filed by Plaintiff Shalana Satterwhite ("Plaintiff" or "Satterwhite") on November 4, 2020.  Defendant Ashtabula County Metroparks ("Defendant" or "ACMP") filed an Opposition to Satterwhite's Motion for Leave to Amend on November 19, 2020.  (Doc. No. 21.)  Satterwhite filed a Reply in Support of her Motion for Leave to Amend on November 25, 2020.  (Doc. No. 24.)

Also before the Court is ACMP's Motion for Summary Judgment ("Summary Judgment Motion") filed on September 5, 2020.  Satterwhite filed an Opposition to the Summary Judgment Motion on November 27, 2020.  (Doc. No. 25.)  ACMP filed a Reply in Support of its Summary Judgment Motion on December 11, 2020.  (Doc. No. 26.)

For the following reasons, Satterwhite's Motion for Leave to Amend is GRANTED IN PART and DENIED IN PART.  Further, ACMP's Summary Judgment Motion is GRANTED.

# I.    Background

## A.    Factual Background

### 1.    Satterwhite's Employment with ACMP

This matter stems from Defendant ACMP's termination of Plaintiff Shalana Satterwhite's employment as an AMCP park ranger.  Satterwhite, an African American woman, worked for ACMP from February 7, 2019 until ACMP terminated her employment on April 26, 2019.  (Doc. No. 1, ¶¶ 11, 12, 44.)  On April 14, 2019, Satterwhite arranged for three African American youth volunteers to assist with an ACMP-sponsored Easter egg hunt.  (*Id.* at ¶ 33.)  According to Satterwhite, after the egg hunt ended, the youth volunteers told Satterwhite that they felt as though another ACMP park ranger, who was white, and other ACMP supervisors, who were also white, treated them "like slaves." (*Id.* at ¶ 36.)  According to Satterwhite, the youth volunteers described the other park ranger as ordering them around while she and the ACMP supervisors declined to assist in the operation of the egg hunt.  (*Id.* at ¶ 34, 35.)  Sometime after the event, Satterwhite brought these concerns to ACMP's Executive Director, Larry Frimerman ("Frimerman") and the other ranger during a meeting.  (*Id.* at ¶ 39.)  Frimerman requested that Satterwhite join him for a drive through the parks and during the drive, brought up the topic of slavery.  (*Id.* at ¶ 41.)  After Frimerman's drive with Satterwhite, Frimerman terminated Satterwhite's employment with ACMP.  (*Id.* at ¶ 42.)  Frimerman told Satterwhite she was being terminated because she failed his "vehicle evaluation" and because she was unfamiliar with how to navigate the parks while operating a vehicle.  (*Id.* at ¶ 43.)

### 2.    Creation and Governance of ACMP

The ACMP was created via an Order from the Ashtabula County Probate Court on November 18, 1959, pursuant to Ohio Rev. C. § 1545.02.  (*See* Doc. No. 14-3, PageID# 81, Exhibit A to

Declaration of Larry Frimerman.)  ACMP is governed by a board of park commissioners.  (Doc. No. 14, PageID# 68.)  There are five board members, none of whom is paid for their board service.  (*Id.* at PageID# 68, 72.)  The ACMP board created and maintains its own bylaws and rules for governance. (*Id.*)  Pursuant to ACMP's bylaws, the ACMP executive director was "responsible for hiring, promotions, demotions, or terminations of any other individual employee who is hired, promoted, or demoted . . . ."  (Doc. No. 14-4, PageID# 91.)  Also pursuant to those bylaws, the ACMP adopted an employee handbook.  (Doc. No. 14-5, PageID# 93.)  The employee handbook addresses ACMP's general employment policies and practices.  (*Id.*)  During 2019, nine employees worked for ACMP.[1] (Doc. No. 14, PageID# 72.)  Of those nine employees, only six employees worked twenty or more weeks in 2019.  (*Id.*)

### B.    Procedural History

On November 15, 2019, Satterwhite filed a Complaint against ACMP, alleging a single count of racial discrimination, in contravention of Title VII of the Civil Rights Act of 1964.  (Doc. No. 1, ¶¶ 50-59.)  On January 14, 2020, ACMP filed its Answer and asserted the affirmative defense that it was not an employer covered under Title VII because ACMP claimed that it had a maximum of eight employees and did not meet Title VII's numerosity threshold of "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." (Doc. No. 5, PageID# 36.)

---

[1] In its briefing, ACMP indicates that it employed eight employees, not nine.  However, the Court notes that ACMP's 2019 payroll record lists nine total employees: Bellas, Blough, Bradek, Eckart, Frimerman, Hamper, Satterwhite, Webb, and Wheeler.  (Doc. No. 14-6, Exhibit D to Frimerman Declaration.)  ACMP does not address the discrepancy. Nevertheless, only six of these employees (Bellas, Blough, Bradek, Eckart, Frimerman, and Wheeler) worked full-time for twenty or more weeks in 2019 and thus count towards ACMP's Title VII numerosity threshold.

3

Pursuant to Fed. R. Civ. P. 26(f), the parties met on January 30, 2020 to formulate a discovery plan.  (Doc. No. 8.)  The parties stipulated in their Report of Parties' Planning that they would exchange initial disclosures by February 20, 2020.  (*Id.*)  Following the Case Management Conference on February 6, 2020, the Court set the following scheduling deadlines: the parties agreed to file all amended pleadings and join all parties without leave of Court on or before March 8, 2020; non-expert discovery would be completed on or before August 7, 2020; expert discovery would be completed on or before November 30, 2020; and dispositive motions would be filed on or before January 15, 2021.  (Doc. No. 10.)

On September 5, 2020—three days prior to the parties' scheduled mediation—ACMP filed the instant Summary Judgment Motion, which focused solely on the legal issue of Title VII numerosity.  (Doc. No. 14.)  On September 9, 2020, the Court held a status conference with both parties.  (Doc. No. 16.)  The Court granted Satterwhite additional time to engage in discovery with respect to ACMP's Summary Judgment Motion.  (*Id.*)  During this additional discovery, Satterwhite deposed Ashtabula County Auditor David Thomas on October 13, 2020.  (Doc. No. 20, PageID# 235.)

Subsequently, Satterwhite filed the instant Motion for Leave to Amend on November 4, 2020, in which she seeks leave to amend her Complaint to add Ashtabula County as a named defendant and also to supplement her Complaint with pendent state law claim.  (*Id.* at PageID# 236.)  Moreover, Satterwhite also seeks to extend the current fact discovery deadline to remedy the disjointed discovery process that has played out in this matter.  (*Id.*)  ACMP filed its Opposition to Satterwhite's Motion for Leave to Amend Complaint on November 19, 2020.  (Doc. No. 21.)  Satterwhite filed a Reply in

4

Support of her Motion on November 25, 2020.  (Doc. No. 24.)  Thus, Satterwhite's Motion for Leave

to Amend the Complaint became ripe for resolution on November 25, 2020.

Additionally, on November 27, 2020, Satterwhite filed her Opposition to ACMP's Motion for

Summary Judgment.  (Doc. No. 25.)  On December 11, 2020, ACMP filed its Reply in Support of its

Motion for Summary Judgment.  (Doc. No. 26.)  Thus, ACMP's Motion for Summary Judgment

became ripe for resolution on December 11, 2020.

## II.      Standard of Review

### A.      Motion for Leave to Amend

A party may amend its pleading once as a matter of course within twenty-one days after

serving it or within twenty-one days after service of a responsive pleading or motion.  Fed. R. Civ. P.

15(a)(1).  Otherwise, "a party may amend its pleading only with the opposing party's written consent

or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Pursuant to Rule 15(a)(2), a court "should freely give

leave [to amend] when justice so requires."  *Id.*; *see also Morse v. McWhorter*, 290 F.3d 795, 799-

800 (6th Cir. 2002) ("Generally, leave to amend is 'freely given when justice so requires.'") (quoting

*Keweenaw Bay Indian Cmty. v. State of Michigan*, 11 F.3d 1341, 1348 (6th Cir. 1993)).  "Though the

decision to grant leave to amend is committed to the trial court's discretion, that discretion is limited

by Fed. R. Civ. P. 15(a)'s liberal policy of permitting amendments to ensure the determination of

claims on their merits."  *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987).  However, "[a]

motion for leave to amend the complaint may be denied when the motion is the product of undue

delay, bad faith, or dilatory motive, amendment would cause undue prejudice to the opposing party,

the plaintiff repeatedly failed to cure deficiencies in the complaint with previous amendments, or

5

amendment of the complaint would be futile." *Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 443 (6th Cir. 2014).

Moreover, once the scheduling order deadline for amendments without leave of court has passed, "a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)).  To demonstrate good cause, a plaintiff must show that the original deadline could not have been met despite due diligence, and that the opposing party will not suffer prejudice by the amendment.  *Id.*

### B.     Motion for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006).  "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018).  In addition, "the moving party bears the initial burden of showing that there

is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014).  The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008).  "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 F. App'x at 508-09.  "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

### III.    Analysis

The Court will first address Plaintiff's Motion for Leave to Amend, before addressing Defendant's Summary Judgment Motion.

#### A.    Motion for Leave to Amend

Satterwhite argues that she meets the standards set forth in Fed. R. Civ. P. 15(a) and 16(b) for obtaining leave to amend her Complaint.  (Doc. No. 20, PageID# 236.)  She argues that she can establish good cause under Fed. R. Civ. P. 16(b) because ACMP engaged in misleading and dilatory discovery tactics that prevented her from being "aware of the facts and issues" that ACMP raised in its separate summary judgment motion.  (*Id.* at PageID# 236-37.)  Satterwhite argues that because

ACMP did not timely provide its initial disclosures or engage in the discovery process in good faith, she can establish good cause for previously failing to seek leave to amend her Complaint.  (*Id.*)

Further, Satterwhite argues that she should be permitted to add Ashtabula County as a defendant because ACMP and Ashtabula County are so interrelated that they should be aggregated as a single employer.  (*Id.* at PageID# 238.)   According to Satterwhite, there is significant evidence that ACMP's operations were closely entwined with Ashtabula County's, which therefore merits aggregating the two entities together.  (*Id.*)  Satterwhite also contends that she should be permitted to include Ashtabula County as a defendant because it is a party required for just adjudication of this matter under Fed. R. Civ. P. 19(a).  (*Id.* at PageID# 239.)  Satterwhite argues that her subsequent deposition of Ashtabula County Auditor David Thomas revealed that ACMP and Ashtabula County are significantly interrelated and any determination on ACMP's summary judgment motion will affect Ashtabula County's legal rights.  (*Id.*)  Thus, Ashtabula County is a necessary party to this action.  (*Id.*)

Finally, Satterwhite argues that she should be permitted to amend her Complaint to include pendent state law claim based on Ohio's antidiscrimination statute.  (*Id.* at PageID# 240.)  Satterwhite argues that she should be permitted to include her claim under Ohio Rev. C. § 4112.02 *et seq*. because if this Court rules in ACMP's favor on its summary judgment motion, Satterwhite's state law claim would likely be barred in state court under Ohio's *res judicata* doctrine.  (*Id.* at PageID# 240-41.)

In its Opposition, ACMP does not address Satterwhite's good cause argument, or argue that any amendment at this stage in the litigation would cause it undue prejudice.  Rather, ACMP's opposition focuses implicitly on the alleged futility of Satterwhite's amendment. (Doc. No. 21, Page# 260.)

8

First, ACMP argues that Satterwhite's Amended Complaint fails because Satterwhite did not timely file a discrimination charge with the EEOC against Ashtabula County.  (*Id.* at PageID# 261.) According to ACMP, Satterwhite's failure to bring an EEOC suit and failure to obtain an EEOC right-to-sue letter against Ashtabula County bars any federal lawsuit against Ashtabula County now.  (*Id.*) Further, ACMP argues that Satterwhite's "aggregate employer" theory fails because she cannot demonstrate that ACMP and Ashtabula County are sufficiently interrelated to overcome the presumption that political subdivisions may not be aggregated for Title VII purposes.  (*Id.* at PageID# 263-64.)  ACMP argues that Satterwhite does not demonstrate any evidence that Ashtabula County controlled ACMP's allegedly discriminatory action and that there is insufficient evidence to merit aggregating the two as a single employer.  (*Id.* at PageID# 266-68.)

With respect to Satterwhite's request for leave to amend her Complaint to include her state law discrimination claim, ACMP concedes that this Court's dismissal of Satterwhite's Title VII claim with prejudice would have *res judicata* effect to any subsequent state action Satterwhite may pursue against ACMP.  (*Id.* at PageID# 269.)  To that end, ACMP agrees that the Court should permit Satterwhite to amend her Complaint to include the state law discrimination claim but urges the Court to decline exercising its supplemental jurisdiction over the state law claim and dismiss them without prejudice.  (*Id.* at PageID# 270.)

In her Reply, Satterwhite argues that the procedural prerequisites for filing a Title VII claim in federal court are "more flexible" than ACMP argues.  (Doc. No. 24, PageID# 282.)  Satterwhite contends that the filing of an EEOC charge is not a jurisdictional prerequisite and is instead subject to "equitable considerations such as waiver, estoppel, and equitable tolling."  (*Id.*)  Moreover, Satterwhite argues, aggregated defendants, such as ACMP and Ashtabula County, are a single

employer, and thus she satisfied all procedural prerequisites prior to filing this matter.  (*Id.* at PageID# 283.)  Satterwhite also argues that the equities weigh in her favor here because "she was only made aware of any potential distinction between Defendant and Ashtabula County after this action was filed."  (*Id.*)  Satterwhite also contends that she need not demonstrate that ACMP and Ashtabula County were established with the intent to "evade" federal anti-discrimination laws to overcome the presumption against aggregating political subdivisions.  (*Id.* at PageID# 283.)  Rather, Satterwhite contends that she overcomes the presumption for the same reasons that the plaintiff in *Burkhard v. Henry County Soil & Water Conservation Dist.* overcame the presumption.  (*Id.* at PageID# 284.)

## 1.    Good Cause Under Fed. R. Civ. P. 16(b)

When the scheduling order deadline to amend without leave has passed, a plaintiff must first demonstrate good cause under Fed. R. Civ. P. 16(b) for failing to abide by the scheduling order deadline before the court will consider whether amendment is proper under Fed. R. Civ. P. 15(a). *Leary*, 349 F.3d at 909.  "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements."  *Inge v. Rock Fin. Group*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)).  Possible prejudice to the party opposing modification is another relevant consideration in the good cause analysis.  *Id.*

Here, the Court established in its February 6, 2020 scheduling order that all pleadings were to be amended without leave of Court and new parties joined by March 8, 2020.  (Doc. No. 10, PageID# 57.)  Satterwhite filed the instant Motion on November 4, 2020.  (Doc. No. 20.)  Thus, the Court must first evaluate whether Satterwhite establishes good cause for failing to amend her Complaint prior to the March 8, 2020 deadline.

10

First, the Court notes that Satterwhite knew when ACMP served its Answer on January 14, 2020 that ACMP asserted the affirmative defense of having too few employees to qualify as a covered employer under Title VII.  (Doc. No. 5.)  Indeed, in her Motion, Satterwhite contends that her counsel conferred with ACMP's counsel regarding this affirmative defense and shared certain documents with ACMP's counsel that listed Ashtabula County as Satterwhite's employer.  (Doc. No. 20, PageID# 233.)  Thus, Satterwhite was aware as early as January 2020 that there was at least a possibility that she may want to amend her Complaint to include Ashtabula County, but she did not attempt to do so until November 2020.  (Doc. No. 20.)

Although the Court views this delay with some concern, ACMP does not argue in its Opposition that Satterwhite fails to satisfy Fed. R. Civ. P. 16(b)'s good cause requirement.  Moreover, it appears that ACMP took certain actions to delay the agreed-upon discovery process.  First, the record reflects that the parties agreed to exchange initial disclosures on or by February 20, 2020, seventeen days before the deadline to amend pleadings and join new parties without leave of Court. (Doc. No. 8.)  Satterwhite contends—and ACMP does not dispute—that ACMP did not provide Satterwhite with its initial disclosures until March 16, 2020, eight days after the deadline to join any new parties.[2]  (Doc. No. 20, PageID# 233.)  Second, Satterwhite contends that, while she issued her first set of interrogatories and requests for production on June 16, 2020, ACMP only provided her with its interrogatory responses on July 31, 2020.  (*Id.* at PageID# 234.)  According to Satterwhite, ACMP's counsel informed her that ACMP's responses to her requests for production were missing and would be produced the following week.  (*Id.*)  According to Satterwhite, ACMP never sent "a

---

[2] Even if ACMP was indeed late in providing Satterwhite with its initial disclosures, the Court notes that Satterwhite did not attempt to amend her Complaint after she received ACMP's tardy disclosures in March 2020.  The Court is not persuaded that these late disclosures impacted Satterwhite's ability to amend her Complaint.

formal response" to her requests for production, but produced some documents on August 28, 2020, and produced Satterwhite's full personnel file on October 14, 2020.  (*Id.*)

Satterwhite also contends—and ACMP does not dispute—that ACMP had only provided Satterwhite with some responsive documents prior to filing its motion for summary judgment on September 5, 2020.  (*Id.*)  According to Satterwhite, certain responsive documents attached to ACMP's motion were never produced to Satterwhite during discovery.  (*Id.*)  Some of these documents included statements from ACMP's director Larry Frimerman, as well as payroll records. (*Id.*)

The Court held a status conference on September 9, 2020 in which it granted Satterwhite additional time to conduct discovery to respond to ACMP's summary judgment arguments as to Title VII numerosity.  (Doc. No. 16.)  As part of this subsequent discovery, Satterwhite deposed Ashtabula County Auditor David Thomas on October 13, 2020.  (Doc. No. 20, PageID# 235.)  According to Satterwhite, Thomas's deposition revealed several material facts about the relationship between ACMP and Ashtabula County that Satterwhite believes demonstrates that Ashtabula County should be aggregated with ACMP for the purpose of her Title VII claim.  (*Id.*)  Moreover, according to Satterwhite, although she requested on June 16, 2020 that ACMP produce her full personnel file, ACMP only produced Satterwhite's full personnel file on October 14, 2020.  (*Id.* at PageID# 233-34.)

Based on the above, the Court concludes that Satterwhite has demonstrated good cause for failing to amend her Complaint prior to the scheduling order deadline.  Although Satterwhite believed Ashtabula County was her employer and was aware that ACMP intended to raise the affirmative defense that it was not an employer covered by Title VII, she only recently obtained the discovery

related to Ashtabula County's relationship with ACMP after ACMP filed its September 5, 2020 motion for summary judgment.

The Court also finds that ACMP will not suffer significant prejudice by allowing Satterwhite to amend. Satterwhite's state law claim arises from the same set of facts as her federal claim and will not require any more discovery on ACMP's part than its existing discovery obligations. Further, it is not clear that adding Ashtabula County as a named defendant would require significantly more discovery on ACMP's part.

Finally, ACMP does not argue that Satterwhite cannot establish good cause, or that ACMP will be prejudiced if Satterwhite is permitted to amend her Complaint. Indeed, had ACMP and Satterwhite fully engaged in a collaborative discovery process from the outset, or if Satterwhite had brought to the Court's attention ACMP's delay in fully responding to her discovery requests, it is possible this Motion would have been put before this Court months ago.

### 2. Motion to Amend Under Fed. R. Civ. P. 15(a)

Having determined that Satterwhite has established good cause under Fed. R. Civ. P. 16(b) for failing to amend her Complaint by the scheduling order deadline, the Court will now consider whether to grant Satterwhite's Motion to Amend under Fed. R. Civ. P. 15(a). As noted *supra*, the factors considered when deciding whether to allow a party to amend a pleading under Fed. R. Civ. P. 15(a)(2) include "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment . . . ." *Wade*, 259 F.3d at 458. Notice and substantial prejudice to the opposing party are critical factors when determining whether to grant an amendment. *Id.* Further, "it is well settled law that the district court may deny a motion to amend if the court concludes that

13

the pleading as amended could not withstand a motion to dismiss." *Martin v. Assoc. Truck Lines Inc.*, 801 F.2d 246, 248 (6th Cir. 1986) (citing *Neighborhood Development Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir. 1980)).

First, the Court finds that Satterwhite provided notice to ACMP of her intent to seek leave to amend her Complaint. During the September 9, 2020 Status Conference, Satterwhite's counsel indicated that he may seek to amend the Complaint to include Satterwhite's state law claim. (Doc. No. 16.) Satterwhite also contends—and ACMP does not refute—that she notified ACMP that she intended to file the instant Motion on October 14, 2020, and that she did not receive a response from ACMP. (Doc. No. 20, PageID# 232.) Additionally, because this is Satterwhite's first attempt to amend her Complaint, the instant Motion is not the result of a failure to cure "repeated deficiencies" in her pleading. Further, nothing in the record or ACMP's Opposition suggests that Satterwhite seeks to amend her Complaint in bad faith. Finally, for the reasons discussed *supra*, the Court finds that Satterwhite did not unduly delay filing this motion, nor will ACMP suffer undue prejudice as a result of amendment. Now, the Court reaches the crux of the matter: whether Satterwhite's amendment is futile.

### a)     Whether Satterwhite's Proposed Amendment is Futile

As discussed *supra*, a "district court may deny a motion to amend if the court concludes that the pleading as amended could not withstand a motion to dismiss." *Martin*, 801 F.2d at 248. The Court concludes that Satterwhite's theory that Ashtabula County and ACMP should be aggregated as a single employer for purposes of Title VII cannot withstand a motion to dismiss. Moreover, the Court concludes that Ashtabula County is not a necessary party to this action, as only ACMP's interests are at stake.

14

Satterwhite argues that Ashtabula County and ACMP are sufficiently interrelated that they should be aggregated as a single employer under Title VII.  (Doc. No. 20, PageID# 238.)  ACMP disagrees and argues that Satterwhite failed to meet the prerequisites for bringing a Title VII suit against Ashtabula County, and also that Satterwhite cannot overcome the presumption against aggregating political subdivisions as single employers under Title VII.  (Doc. No. 21, PageID# 261-65.)

The Sixth Circuit has promulgated various doctrines by which a *corporate* defendant who does not directly employ a plaintiff may still be considered a defendant for purposes of employment discrimination claims.  *See Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997).  The approach relevant to the instant Motion for Leave to Amend is the "single employer" doctrine, which asks whether "two entities are so interrelated that they may be considered a 'single employer' or an 'integrated enterprise.'" *Id.* (citing *York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360 (6th Cir. 1982)).  According to the Sixth Circuit:

> In determining whether to treat two entities as a single employer, courts examine the following four factors: (1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control.  *York*, 684 F.2d at 362.
>
> None of these factors is conclusive, and all four need not be met in every case. *Armbruster* [*v. Quinn*], 711 F.2d [1332 . . .,] 1337-38 [(6th Cir. 1983) (abrogated on other grounds by *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006)].  Nevertheless, **control over labor relations is a central concern**. *Id.* at 1337; *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993); *Rogers v. Sugar Tree Prod., Inc.*, 7 F.3d 577, 582 (7th Cir. 1993); *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983).

*Id.* at 993-94 (emphasis added).

15

However, the Sixth Circuit has not promulgated a standard for determining whether two *public* subdivisions may be aggregated as a single employer for Title VII purposes. *See, e.g., Burkhard v. Henry Soil & Water Conservation Dist.*, No. 3:02-cv-7428, 2005 WL 1863828, at *2 (N.D. Ohio. Aug. 3, 2005) ("The Sixth Circuit, however, has not promulgated a standard for determining whether two political subdivisions ought to be considered a single employer for Title VII purposes."). Instead, at least four district courts within the Sixth Circuit have applied an Eleventh Circuit case, *Lyes v. City of Riviera Beach, Florida*, in the absence of direct authority from the Sixth Circuit on when to aggregate political subdivisions as single employers. *See, e.g., Burkhard*, 2005 WL 1863828, at *2; *see also Beauchamp v. City of Paducah*, No. 5:12-cv-00090-TBR, 2014 WL 2805609, at *2 (W.D. Ky. June 20, 2014); *Dumas v. Hurley Med. Center*, 905 F. Supp. 2d 775, 779 (E.D. Mich. 2012); *Schwarz v. Berrien Springs Police Dep't.*, No. 1:98-cv-88, 1999 WL 819639, at *12-13 (W.D. Mich. 1999).

### (1) The Eleventh Circuit's *Lyes* standard

In *Lyes*, the Eleventh Circuit, sitting en banc, adopted a standard on when to aggregate governmental entities as a single employer for the purposes of Title VII. *Lyes v. City of Riviera Beach, Florida*, 166 F.3d 1332, 1342-44 (11th Cir. 1999) (en banc). In *Lyes*, the plaintiff, Shari Lyes, sued her employer, the City of Riviera Beach Community Redevelopment Agency ("CRA"), the City of Riviera Beach City Council ("the City"), and CRA's executive director for sex discrimination under Title VII after CRA allegedly declined to hire Lyes as its executive director based on her sex. *Id.* at 1335. The district court granted summary judgment to the defendants because CRA employed fewer than fifteen employees, as required by Title VII, and because the City and CRA should not be aggregated as a single employer for Title VII purposes. *Id.* at 1335-36. On appeal, the panel reversed

16

the district court's decision, and the full Eleventh Circuit granted en banc review of the panel's decision. *Id.* at 1336. Ultimately, the Eleventh Circuit concluded that the plaintiff presented insufficient evidence of interrelatedness between the two political subdivisions to overcome the presumption that political subdivisions should be treated as separate entities. *Id.* at 1347.

The Eleventh Circuit observed that when faced with the question of whether to aggregate two private employers as a single employer under Title VII, it applied the four-factor test derived from NLRB litigation. *Id.* However, the Eleventh Circuit also observed that Lyes did not seek to aggregate two private entities, but two public ones. *Id.* The Eleventh Circuit noted that "[s]tates are not the equivalent of corporations or companies, and local government bodies are not the same as subsidiaries," and that, with this in mind, the Eleventh Circuit would "join those courts that have concluded that 'the [four-part NLRB] standard is not readily applicable to governmental subdivisions[.]'" *Id.* at 1342-43 (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 n. 10 (5th Cir.1983)).[3]

The Eleventh Circuit identified several reasons that the NLRB four-factor test was incompatible with cases involving governmental entities. For example, the Eleventh Circuit concluded that the "common ownership or financial control" factor was incompatible because "[g]overnmental subdivisions such as counties or towns, or smaller subdivisions such as local agencies, may share sources of ultimate political control or funding, yet be wholly distinct with respect to their day-to-day operations or their control over relationships with employees." *Id.* at 1343. Moreover the "common management" factor was also often incompatible when analyzing two

---

[3] The Eleventh Circuit also acknowledged that, while it joined those courts that have concluded that the NLRB test is "not readily applicable to governmental subdivisions," other courts, such as those within the Eighth and Ninth Circuits, apply the NLRB test to governmental subdivisions. *Lyes*, 166 F.3d at 1343.

governmental entities because in some instances, "two public entities may share managers or other employees while remaining politically separate and distinct." *Id.* Further, the Eleventh Circuit identified another, "more fundamental" reason for not applying the NLRB four-factor test to governmental subdivisions:

> That reason involves federalism and comity concerns, which should play a significant role in determining whether to treat as one body two governmental entities that are separate and distinct under state law. When it comes to creating subordinate public bodies and defining their relationship to one another and to itself, "'the state is supreme and its legislative body, conforming its action to the state Constitution, may do as it will.'"

*Id.* (quoting *City of Trenton v. State of New Jersey*, 262 U.S. 182, 186-87 (1923)).

Ultimately, *Lyes* rejected the NLRB four-factor test and adopted its own standard for determining whether to "aggregate two or more governmental entities and treat them as a Title VII employer . . . ." *Id.* at 1344. *Lyes* announced its standard as follows:

> To summarize, we hold that when assessing whether multiple governmental entities are a single "employer" under Title VII, we begin with the presumption that governmental subdivisions denominated as separate and distinct under state law should not be aggregated for purposes of Title VII. That presumption may be rebutted by evidence establishing that a governmental entity was structured with the purpose of evading the reach of federal employment discrimination law. Absent an evasive purpose, the presumption against aggregating separate public entities will control the inquiry, unless it is clearly outweighed by factors manifestly indicating that the public entities are so closely interrelated with respect to control of the fundamental aspects of the employment relationship that they should be counted together under Title VII.

> The standard we adopt is not whether a fact finder reasonably could conclude the plaintiff has overcome the presumption. Instead, the standard is whether the fact finder reasonably could conclude the plaintiff has clearly overcome the presumption. The adverb "clearly," which derives from the federalism concerns we have discussed, is meant to be limiting. It is a thumb on the scale, and sometimes it will be decisive because federalism concerns should sometimes be decisive. Absent evidence of evasive purpose, in order to survive a motion for summary judgment, a plaintiff will have to show that a reasonable fact finder could conclude that the presumption of distinctness is clearly outweighed.

18

*Lyes*, 166 F.3d at 1345-46.

To determine "which factors should be considered in deciding whether the plaintiff has carried her burden of showing that the presumption has been clearly outweighed," the *Lyes* court looked to "the factors courts have considered in Title VII cases involving private employers." *Id.* at 1344-45. The Eleventh Circuit concluded that all courts shared a common focus on one particular factor: "all of them seek to determine who (or which entity) is in control of the fundamental aspects of the employment relationship that gave rise to the claim." *Id.* at 1345. According to *Lyes*:

> [T]wo or more state or local governmental entities will be treated as a single "employer" under Title VII where one entity exerts or shares control over the fundamental aspects of the employment relationships of another entity, to such a substantial extent that it clearly outweighs the presumption that the entities are distinct. Several factors will guide our determination of whether the presumption in favor of the distinctness of the public entities is clearly outweighed—or, at the summary judgment stage, whether a finder of fact could reasonably conclude that it is clearly outweighed. As we have already noted, the NLRB factors of "interrelation of operations" and "centralized control of labor operations," *McKenzie*, 834 F.2d at 933, may continue to be helpful in the inquiry. Useful "indicia of control" may be drawn from the agency context, including: "'the authority to hire, transfer, promote, discipline or discharge; the authority to establish work schedules or direct work assignments; [and] the obligation to pay or the duty to train the charging party.'" *Oaks v. City of Fairhope, Ala.*, 515 F. Supp. 1004, 1035 (S.D. Ala. 1981) (quoting Barbara Schlei and Paul Grossmann, Employment Discrimination Law 846 (1st ed.1976)). Our list of factors is not intended to be all inclusive, and consideration must be given to the totality of the circumstances.

*Id.* Thus, under *Lyes*, the primary consideration is the extent to which one governmental entity controlled the fundamental aspects of another governmental entity's employment relationships that gave rise to the claim at issue. *Id.*

### (2) Application of *Lyes* within Sixth Circuit district courts

As discussed *supra*, the Sixth Circuit has not adopted *Lyes*. However, at least four districts within the Sixth Circuit have applied *Lyes* in the absence of explicit Sixth Circuit guidance regarding

whether the aggregation of governmental entities should be analyzed under the traditional four-factor test or a different standard in the context of Title VII.  *See, e.g., Burkhard*, 2005 WL 1863828, at *2-3.

### Schwarz v. Berrien Springs Police Dept.

In *Schwarz*, the plaintiffs sought to aggregate a police department with fewer than fifteen employees with the Village of Berrien Springs and Oronko Township to bring a Title VII claim against the police department.  *Schwarz v. Berrien Springs Police Dept.*, No. 1:98-cv-88, 1999 WL 819639, at *9 (W.D. Mich. Aug. 6, 1999).  The plaintiffs argued that the police department was operated jointly by the Village and by the Township because the municipalities shared costs with the police department.  *Id.* at *10.  The *Schwarz* court acknowledged that the Sixth Circuit applied the NLRB four-factor test when deciding whether to aggregate private employers, but also noted that "courts have also observed that this four-part NLRB test is not readily applicable to cases involving state and local governmental entities."  *Id.* at *12 (citing *Lyes*, F.3d at 1342-44).  Accordingly, the court found that it was appropriate to apply *Lyes* to plaintiffs' claims.  *Id.*

The *Schwarz* court was not persuaded by plaintiffs' evidence that the village jointly funded the police department, because the plaintiffs presented no evidence related to whether the village had any control over the police department's labor relations.  *Id.* at *15.  The court concluded that, "because Michigan law recognizes intermunicipal authorities as separate entities, and because plaintiffs have presented no evidence that the village and township exercised control over employees of the police department, . . . plaintiffs have not overcome the presumption against aggregating the entities recognized in *Lyes*."  *Id.* at *16.

### Burkhard v. Henry Soil and Water Conservation Dist.

The Northern District of Ohio applied *Lyes*, rather than the NLRB four-factor test, in *Burkhard v. Henry Soil and Water Conservation Dist.* 2005 WL 1863828, at *2-3. In *Burkhard*, the plaintiff sued his former employer, a county soil and water conservation district, as well as the county itself, for alleged employment discrimination. *Id.* at *1. The defendant district moved to dismiss the plaintiff's suit, arguing that the district did not meet Title VII's definition of "employer" because the district employed too few employees. *Id.* The plaintiff argued that the district and the county were sufficiently interrelated to overcome the presumption against aggregating separate political subdivisions. *Id.* Unlike in *Schwarz*, the court concluded that the plaintiff overcame *Lyes*'s presumption of separation. *Id.* at *3. The court concluded, as a matter of law, that the district and county should be aggregated as a single employer under Title VII. *Id.*

First, the *Burkhard* court noted that only the district, not the county, exerted control over the district's employment practices. According to the court, the district's employees were "supervised by and take direction from the District Administrator Robert George and are answerable only to George and the District's Board of Supervisors." *Id.* Moreover, the court noted that "[t]he District also has a personnel policy for its employees that is separate and different from the County's policy, and the District determines its own pay scale and pay raises." *Id.* Thus, according to the *Burkhard* court, only the district, and not the county, had control over the employment practices that gave rise to the plaintiff's retaliation claim. *Id.*

Although *Lyes* emphasized that the primary consideration of the aggregation analysis is whether the nominal employee controlled "the fundamental aspects of the employment relationship that gave rise to the claim," the *Burkhard* court did not analyze whether the plaintiff's proffered evidence demonstrated that the county controlled the "fundamental aspects of the employment

relationship that gave rise to the claim." *Lyes*, 166 F.3d at 1344. Rather, *Burkhard* reasoned that the plaintiff presented evidence of "significant interrelation" between the district and county, which allowed the plaintiff "to clearly overcome the presumption" of separation between the two entities. *Burkhard*, 2005 WL 1863828, at *4. The court found the fact that the plaintiff's W-2 tax form listed the county, rather than the district, as his employer to be particularly significant in determining whether the county and district were interrelated. *Id.* at *3. The plaintiff also presented evidence that the county auditor issued the plaintiff's paychecks, that the county assigned him the employee identification number 119 (indicating that the county employed more than Title VII's required fifteen or more employees), that the county selected district employees' health care plan options, that the county's workers' compensation plan covered district employees, that the county administered the district's public employee retirement system payments, the county's commissioners set the paid holiday schedule for district employees, and the plaintiff was required to attend county personnel management training sessions. *Id.* at *3-4. Thus, "regarding fundamental aspects of the employment relationship, there is significant interrelation between the District and the County." *Id.* at *4. Consequently, the court held that, as a matter of law, the district's and county's employees "should be aggregated for Title VII purposes" and denied the district's motion to dismiss. *Id.*

### *Dumas v. Hurley Medical Center*

In *Dumas*, the Eastern District of Michigan also applied *Lyes*, rather than the NLRB four-factor test, to the plaintiff's argument that her former employer, Hurley Medical Center, should be aggregated with the City of Flint, Michigan. *Dumas*, 905 F. Supp. 2d at 780. *Dumas*'s approach differed from *Burkhard*'s approach. While *Burkard* acknowledged that the district, not the county, controlled its own employment decisions, the issue of control over employment decisions was not

dispositive, or the court did not rely upon it, in its aggregation analysis.  2005 WL 1863828, at *3.

Instead, the *Burkhard* court determined that the plaintiff overcame *Lyes*'s presumption of separation

because the plaintiff demonstrated "significant interrelation" between the two entities.  *Id*. at *4.

However, the *Dumas* court, like the *Schwarz* court, interpreted *Lyes* to make the key inquiry whether

the nominal employer exerted control over the "'fundamental aspects of the employment

relationship'" that gave rise to the plaintiff's claim.  *Dumas*, 905 F. Supp. 2d, at 781 (quoting *Lyes*,

166 F.3d at 1345).  According to *Dumas*, while the plaintiff demonstrated that the City enjoyed

> some control over Hurley, the critical inquiry is whether the City exercises 'control of
> the fundamental aspects of the employment relationship that *gave rise to the claim.*'
> *Lyes,* 166 F.3d at 1345 (emphasis added). There is no evidence that the City exercises
> control over Hurley's day-to-day policies, such as work assignments, employment
> conditions, and performance expectations, from which Plaintiff's lawsuit arose.

*Id.* (quoting *Lyes*, 166 F.3d at 1345).  Accordingly, because the City did not control the "fundamental

aspects of Hurley's employee relations that gave rise to Plaintiff's claim," the court concluded that

the plaintiff did not overcome the presumption of separation and that Hurley and the City should not

be aggregated as a single employer.  *Id.*

### Beauchamp v. City of Paducah

The Western District of Kentucky applied *Lyes* in *Beauchamp v. City of Paducah*.

*Beauchamp*, 2014 WL 2805609, at *3.  In *Beauchamp*, the plaintiff, the former executive director of

the Paducah Human Rights Commission (PHRC), sought to aggregate the defendants, the City of

Paducah and PHRC, as a single employer.  *Id.*  The plaintiff argued that he overcame the presumption

because "the Paducah City Commissioners approved his hire, the city manager and finance director's

signatures were embossed across his checks, the PHRC Commissioners are appointed by the City

Commissioners, and his office was on the first floor of City Hall."  *Id.*  The court was not persuaded

by the plaintiff's evidence, noting that the plaintiff's assertion that the City cut the plaintiff's paychecks was insufficient to demonstrate that the City controlled "the fundamental aspects of the employment relationship *that gave rise to the claim*."  *Id.* at *4 (quoting *Lyes*, 166 F.3d at 1343). Accordingly, the court declined to aggregate the City and PHRC as a single employer for Title VII purposes.  *Id.* at *5.

Thus, while several district courts within the Sixth Circuit have adopted *Lyes*, the Sixth Circuit has not expressly adopted it and this Court cannot say for certain whether it would or would not. Despite ACMP's characterization of *Lyes* as "the seminal case regarding public employers," there are several circuits that have not adopted *Lyes*'s standard on when to aggregate governmental entities as single employers under Title VII.  For example, the Fifth Circuit also has declined to apply the NLRB four-factor test to public employers but has not adopted a separate standard as in *Lyes*.  *See, e.g., Trevino v. Celanese Corp.*, 701 F.2d 397, 404 n. 10; *see also Garrett-Woodberry v. Miss. Bd. of Pharm.*, 300 Fed. App'x 289, 291 (5th Cir. 2008) ("Thus, it seems clear that the 'single employer' test should not be applied here, as the Board is a state agency and is thus a governmental subdivision."); *Dyas v. City of Shreveport,* No. 16-1607, 2017 WL 3711898, at *3 (W.D. La. Aug. 28, 2017) ("Although the Fifth Circuit's language [in *Garrett-Woodberry*] is somewhat tepid, the court has time and again affirmed decisions declining to apply the integrated enterprise theory when one of the entities is governmental.")

At least one other circuit has also declined to extend the NLRB four-factor test to public entities.  *See, e.g., Gulino v. N.Y. State Educ. Dept.*, 460 F.3d 361, 379 (2d Cir. 2006) (noting that, "[i]n this Circuit, this analysis has been confined to two corporate contexts," and that it would "be impracticable" to extend this test "to cases involving the complex relations between levels of

government"); *see also Popat v. Levy*, 328 F. Supp. 3d 106, 118 (W.D.N.Y. 2018) (declining to apply the four-factor test because the court was "loath to extend the 'single employer' doctrine outside of its well-defined limits, especially where, as here, a government entity is involved").

Some circuits have applied the NLRB four-factor test to private *and* public employers. *See, e.g., Artis v. Francis Howell North Band Booster Assoc.*, 161 F.3d 1178, 1184 (8th Cir. 1998); *Ferderer v. North Dakota*, 447 F. Supp. 2d 1053, 1066 (D.N.D. 2006) (noting that *Lyes* declined to follow the Eighth Circuit's approach to determining when governmental entities should be considered a single employer); *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1322 (10th Cir. 2004); *Vandermeer v. Douglas County*, 15 F. Supp. 2d 970, 974-80 (D. Nev. 1998) (applying NLRB four-factor test and concluding that "[t]he fact that Nevada may consider Douglas County and the Districts to be separate political subdivisions, while relevant, does not control").

Further, at least two circuits have declined to apply the NLRB four-factor test to either private or public employers. *See, e.g., Papa v. Katy*, 166 F.3d 937, 942-43 (7th Cir. 1999); *see also Worth v. Tyer*, 276 F.3d 249, 260 (7th Cir. 2001) (". . . this Circuit no longer applies the 'integrated enterprise' test to Title VII claims"); *see also Nesbit v. Gears Unlimited*, 347 F.3d 72, 85 (3d Cir. 2003) (holding that it would consider a company and its affiliate to be a single employer for Title VII purposes when either a company splits itself in two to avoid Title VII liability, when a parent company directs a subsidiary's discriminatory act, or when the entities can be substantively consolidated, according to factors used in the bankruptcy context).

Based on the above, the Court is not persuaded that the Sixth Circuit would necessarily adopt *Lyes*, particularly when other circuits approach the issue of aggregating public employers differently

25

from the Eleventh Circuit. Accordingly, the Court will apply the Sixth Circuit's promulgated four-factor "single employer" test to Satterwhite's claim. *See Swallows*, 128 F.3d at 994.

Just as the Eleventh Circuit observed in *Lyes*, the Court also observes that, whether a particular court applies *Lyes*, the NLRB four-factor test, or some approach in between, the central concern driving courts' single-employer analyses is the extent to which the nominal employer exercised control over the named employer's employment decision of which the employee complains. *See Swallows*, 128 F.3d at 995 (while no one factor is conclusive, "control over labor relations is a central concern"); *Lyes*, 166 F.3d at 1345 (noting that "centralized control of labor operations" remains a useful factor in the aggregation inquiry and that indicia of control include the authority to hire, fire, set work schedules and assignments, and the obligation to pay or duty to train the party); *Sandoval*, 388 F.3d at 1322 (10th Cir. 2004) (emphasizing that the most important of the four factors is the entity's extent of control over labor-related decision-making); *Papa*, 166 F.3d at 941 (where the parent company directs the subsidiary's discriminatory act, the parent company disregards the subsidiary's separate corporate existence and forfeits the right to be treated as a separate entity under Title VII); *Beauchamp*, 2014 WL 2805609, at *4 (declining to aggregate two governmental entities where only the actual employer, not the nominal employer, "controls 'the fundamental aspects of its employee relations' and clearly controls the aspects of the employment relationship that '*gave rise to the claim.*'"); *Dumas*, 905 F.Supp.2d at 782 (same).

### (3) Whether Ashtabula County and ACMP should be aggregated as a "single employer"

Examining the four factors in the context of Satterwhite's case, the Court concludes that Ashtabula County and ACMP cannot be aggregated as a single employer for Title VII purposes. First and foremost, Satterwhite does not present any evidence regarding the third factor, "centralized

26

control of labor relations and personnel." *Swallows*, 128 F.3d at 994.  Indeed, Ashtabula County Auditor David Thomas's deposition testimony belies Satterwhite's argument that Ashtabula County controlled any of ACMP's employment decisions, particularly with respect to the decision to terminate Satterwhite's employment.  (*See* Doc. No. 19, PageID# 176.)  For example, Thomas testified that the Ashtabula County Auditor's Office did not hire nor terminate Satterwhite.  (*Id.*) Rather, ACMP has always possessed the power to hire its employees, according to Ohio statute.  *See* Ohio Rev. Code § 1545.07 (specifying that the Board of park commissioners "may employ a secretary and such other employees as are necessary in the performance of the powers conferred in such sections").  Ashtabula County's lack of control over ACMP's ability to hire or fire employees weighs strongly against Satterwhite's attempt to aggregate the two, because Satterwhite's sole claim is based on discriminatory termination.  (Doc. No. 1.)  Ashtabula County did not have the power to terminate Satterwhite's employment and Satterwhite does not present any evidence to the contrary that Ashtabula County exercised any control over ACMP's decision to terminate Satterwhite's employment.  *See Swallows*, 128 F.3d at 995 (quoting *EEOC v. Illinois*, 69 F.3d 167, 171 (7th Cir. 1995) ("So far as discrimination in hiring and firing on the basis of age or other forbidden characteristics is concerned, the key powers are, naturally, those of hiring and firing.")); *Sanford v. Main Street Baptist Church Manor, Inc.*, 449 Fed. App'x 488, 495 (6th Cir. 2011) (quoting *Swallows*, 128 F.3d at 994) (plaintiff-employee failed to show that nominal employer had any role in actual employer's personnel matters, which is "'the central concern' of the single-employer doctrine").  *But see Harrison v. Soave Enters. LLC*, 826 F. App'x 517, 522 (6th Cir. 2020) (affirming district court's ruling that nominal employers may be aggregated with named employer because "the individuals

who were involved in the decision to terminate Harrison (and thus who engaged in the alleged discriminat[ion] against her . . .) actually worked for" the nominal employers).

Satterwhite presents some evidence with respect to the other factors, including that: (1) Ashtabula County provides healthcare to ACMP employees; (2) the Ashtabula County Commissioners select the healthcare plans offered to ACMP employees; (3) Ashtabula County is listed as Satterwhite's employer on her W-2 and W-4 tax forms; (4) the Ashtabula County Auditor managed Satterwhite's retirement withholdings and reporting; (5) the Ashtabula County Auditor serves as treasurer and member of ACMP's Board by virtue of his elected office; (6) the Ashtabula County Auditor's office employs twenty-two employees, and Ashtabula County employs between 745 and 850 employees; (7) Satterwhite's employee identification number was 2104, indicating that she was the 2,104th employee of Ashtabula County; and (8) Satterwhite's termination notice was sent on an Ashtabula County form.  (Doc. No. 20, PageID# 235; Doc. No. 25, PageID# 287-88).

At most, Satterwhite's evidence shows that ACMP, a small governmental subdivision, relied on Ashtabula County, a much larger governmental subdivision, for support in managing payroll, record-keeping, and employee benefit functions.  The Court agrees with ACMP that Satterwhite's evidence regarding Ashtabula County's performance of payroll and human resource functions does not suggest that Ashtabula County exerted control over ACMP's allegedly discriminatory decision to terminate Satterwhite's employment.  (*See* Doc. No. 21, PageID# 268.)

Further, even if the Court applied the *Lyes* standard, rather than the four-factor test, the Court still concludes that Ashtabula Count and ACMP cannot be aggregated as a single employer for the reasons discussed above.  The Court finds the cases of *Beauchamp* and *Dumas* instructive here.  In *Beauchamp*, the court concluded that the plaintiff did not clearly overcome the presumption of

separation between the two governmental entities, despite the plaintiff's evidence that the City cut his paychecks and that the City Commissioners appointed the PHRC Commissioners.  *Beauchamp*, 2014 WL 2805609, at *5.  According to the court, the allegation that the City cut the plaintiff's paychecks did not clearly overcome the presumption of separation because governmental subdivisions "may share sources of ultimate political control or funding, yet be wholly distinct with respect to their day-to-day operations or their control over relationships with employees."  *Id.* at *4 (quoting *Lyes*, 166 F.3d at 1343).  According to the *Beauchamp* court, "'the fundamental aspects of the employment relationship that *gave rise to the claim*' are controlled by the PHRC—not the City." *Id.*  Satterwhite's attempt to aggregate Ashtabula County and ACMP fails for the same reason. Satterwhite's racial discrimination claim is based on ACMP's allegedly discriminatory decision to terminate her employment.  (Doc. No. 1, ¶¶ 50-59.)  As discussed *supra*, Ashtabula County exerted no control over this—or any other—ACMP hiring or firing decision.  At most, Satterwhite has presented some evidence that ACMP relies on Ashtabula County to handle certain operational functions, but this does not "clearly overcome" the presumption of separation set forth in *Lyes*. *Beauchamp*, 2014 WL 2805609, at *5 (applying *Lyes*).  *See also Dumas*, 905 F. Supp. 2d at 782 (concluding that, although the City owned the hospital and the hospital's Board of Managers were appointed by the City and Mayor, the hospital employee-plaintiff was not also a City employee because the hospital's Board retained the exclusive authority to manage and operate the hospital).

Satterwhite argues that her case is analogous to *Burkhard v. Henry Soil and Water Conservation District*.  (Doc. No. 20, PageID# 238.)  ACMP concedes that *Burkhard* supports Satterwhite's argument but also argues that *Burkhard* incorrectly applied *Lyes* and has been subsequently criticized in *Dumas* and *Beauchamp*.  (Doc. No. 21, PageID# 265.)  The Court agrees

that much of Satterwhite's proffered evidence mirrors the *Burkhard* evidence.  In particular, the *Burkhard* plaintiff proffered evidence that his W-2 tax form listed the county, not the conservation district, as his employer.  *Burkhard*, 2005 WL 1863828, at *3.  The *Burkhard* court found the plaintiff's W-2 designation to be especially persuasive, distinguishing the plaintiff's W-2 from evidence proffered in *Lyes*, when the Eleventh Circuit did not find the fact that the plaintiff's performance review was printed on City, rather than CRA, letterhead to weigh in favor of aggregation.  *Id.*  The *Burkhard* court concluded that the "employer designation on W-2 forms and account on which a paycheck is drawn is a much more than a mere choice of stationery."  *Id.*

The Court agrees that it is somewhat significant that Satterwhite's W-2 designates Ashtabula County as her employer, rather than ACMP.  However, the *Lyes* standard is whether a plaintiff "clearly overcomes" the presumption of separation between two governmental entities.  *Lyes*, 166 F.3d at 1345-46.  After examining *Burkhard* alongside *Beauchamp*, *Dumas*, and *Lyes*, the Court is not persuaded that a W-2 employer designation is enough to "clearly overcome" the presumption of separation between Ashtabula County and ACMP.  According to *Lyes*, the primary consideration in the aggregation analysis is whether the nominal employer exerted control over the fundamental aspects of the actual employer's employment decisions that gave rise to the claim.  *Dumas*, 905 F. Supp. 2d 775, 782 (citing *Lyes*, 166 F.3d at 1346).  The *Burkhard* court concluded that "regarding fundamental aspects of the employment relationship, *there is significant interrelation* between the District and the County."  *Burkhard*, 2005 WL 1863828, at *4 (emphasis added).  However, in this Court's reading of it, *Lyes* does not examine or rely upon "interrelation," but focuses specifically on control.

While the Court agrees that Satterwhite's evidence demonstrates interrelation between Ashtabula County's and ACMP's operations, the Court disagrees that Satterwhite's evidence demonstrates that the two were so interrelated that Ashtabula County exercised control over ACMP's decision to terminate Satterwhite's employment. (Doc. No. 20, PageID# 235.) Therefore, even if this Court applied *Lyes*, rather than the four-factor single employer test, the Court still concludes that Ashtabula County and ACMP should not be aggregated as a single employer for Title VII purposes.

Moreover, because Satterwhite was employed by ACMP, not Ashtabula County, the Court disagrees with Satterwhite's argument that Ashtabula County is a party required for just adjudication of this case under Fed. R. Civ. P. 19(a). As discussed *supra*, ACMP is a separate entity from Ashtabula County. Only ACMP's interests are implicated in the instant matter.

Accordingly, the Court concludes that Ashtabula County and ACMP cannot be aggregated as a single employer for Title VII purposes and that Ashtabula County is not a party required for just adjudication. Therefore, it would be futile to grant Satterwhite's Motion for Leave to Amend to the extent that she seeks to add Ashtabula County as a named defendant. The Court denies Satterwhite leave to amend her Complaint with respect to adding Ashtabula County as a defendant.

### b) Satterwhite's Pendent State Law Claim

Satterwhite seeks leave to amend her Complaint with a pendent state law claim to avoid the possibility that she might be foreclosed under Ohio's *res judicata* doctrine from bringing it in state court, should her federal claim fail in the instant matter. (Doc. No. 20, PageID# 240-41.) ACMP agrees that, "in the interest of justice," this Court should allow Satterwhite to amend her Complaint with her pendent state law claim. (Doc. No. 21, PageID# 270.) ACMP also urges that this Court decline to exercise supplemental jurisdiction over Satterwhite's state law claim and dismiss the claim

31

without prejudice.  (*Id.*)  The Court agrees that Satterwhite should be permitted to amend her Complaint to add her pendent state law claim and grants Satterwhite leave to do so.

### B.    Summary Judgment Motion

In its Summary Judgment Motion, ACMP argues that it does not qualify as an employer under Title VII because it never employed more than six qualifying employees, *i.e.* employees who worked each working day for twenty or more weeks in 2019, and never employed more than eight total employees throughout all of 2019.  (Doc. No. 14, PageID# 72.)  According to ACMP, because ACMP does not satisfy Title VII's definition of "employer," Satterwhite cannot establish one of the elements necessary for her claim for relief.  (*Id.* at PageID# 70.)  Therefore, ACMP argues, the Court must dismiss Satterwhite's sole Title VII claim.  (*Id.*)

In response, Satterwhite argues that there is a genuine issue of material fact as to whether Ashtabula County should be aggregated with ACMP as a single employer, regardless of whether this Court grants Satterwhite's Motion for Leave to Amend to include Ashtabula County as a party necessary for just adjudication.  (*Id.* at PageID# 288-89.)  Satterwhite reiterates her arguments from her Motion for Leave to Amend briefing, namely that Ashtabula County and ACMP are so interrelated in their operations that they should be aggregated as a single employer.  (*Id.* at PageID# 289-90, *citing Burkhard*, 2005 WL 1863828, at *3-5.)  In addition to reiterating her previous arguments, Satterwhite's Opposition includes one new bullet point, noting that Ashtabula County and the Ashtabula County Auditor lack the ability to control day-to-day operations or hire and fire employees within various county departments.  (*Id.* at PageID# 288.)

In its Reply, ACMP reiterates its arguments from its Opposition to Satterwhite's Motion for Leave to Amend, namely that Satterwhite cannot overcome *Lyes*'s presumption of separation between

32

two governmental entities. (Doc. No. 26, PageID# 292-93.) The Court agrees with ACMP that Satterwhite's federal Title VII claim must be dismissed because ACMP does not meet Title VII's definition of "employer," and because Ashtabula County and ACMP cannot be aggregated as a single employer.

An employer is only subject to Title VII if it employs fifteen or more employees on each working day for twenty or more calendar weeks in either the year in which the alleged discrimination took place or the preceding year. 42 U.S.C. § 2000e(b). This numerosity threshold is an element of the plaintiff's claim, not a jurisdictional requirement. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 504 (2006). An employer that does not meet Title VII's numerosity requirement may nevertheless face liability through the single-employer doctrine, as discussed *supra*. *See Swallows*, 128 F.3d at 993.

The Court concludes that ACMP does not meet Title VII's numerosity requirements. According to ACMP's 2019 payroll statements, ACMP paid nine total employees during 2019. (Doc. No. 14-6.) Three of those employees worked fewer than twenty weeks. (*Id.* at PageID# 134.) Thus, ACMP employed only six employees each working day for twenty or more weeks during 2019. (*Id.* at PageID# 128-33.)

Although Satterwhite argues that there is a "genuine issue of material fact as to the number of employees attributable to" ACMP, Satterwhite does not dispute ACMP's contention that it employed only six employees each working day for twenty or more weeks in 2019. (Doc. No. 25, PageID# 288.) Rather, Satterwhite argues that there is a genuine issue of material fact as to whether Ashtabula County's employees should be aggregated with ACMP's employees. (*Id.* at PageID# 289.) The Court disagrees that this is a factual dispute. Indeed, the parties appear to agree on the material facts, namely that ACMP relies on Ashtabula County for certain operational support and that ACMP

employed fewer than fifteen employees in 2019. (Doc. No. 25, PageID# 287-88; Doc. No. 26, PageID# 292.) Rather, the parties disagree on how to apply the law to the facts: Satterwhite argues that Ashtabula County and ACMP must be aggregated for Title VII purposes and ACMP disagrees. (*Id.*) The Court addressed the aggregation issue above.[4] As discussed *supra*, Ashtabula County and ACMP should not be aggregated as a single employer.

ACMP does not meet Title VII's definition of a covered employer because it employed fewer than fifteen employees for twenty or more weeks in 2019. *See* 42 U.S.C. § 2000e(b). Therefore, the Court grants summary judgment in favor of ACMP.

## IV. Conclusion

For the reasons set forth above, Plaintiff's Motion for Leave to Amend her Complaint (Doc. No. 20) is granted in part and denied in part. The Court denies Plaintiff's Motion for Leave to Amend her Complaint to add Ashtabula County as a defendant. The Court grants Plaintiff's Motion for Leave to Amend her Complaint to add her pendent state law claim. Plaintiff is ordered to file her Amended Complaint with respect to her pendent state law claim within three days of the filing of this Memorandum Opinion and Order.

Further, the Court grants Defendant's Summary Judgment Motion. (Doc. No. 14). Upon the timely filing of Satterwhite's Amended Complaint to include her state law claim, the Court will enter judgment in favor of ACMP and against Plaintiff on her Title VII claim, decline to exercise pendent

---

[4] In her Opposition to ACMP's Summary Judgment Motion, Satterwhite includes a new bullet point not addressed in her Motion for Leave to Amend: that Ashtabula County and the Ashtabula County Auditor lack the authority to control day-to-day operations or hire and fire employees within certain county departments. (Doc. No. 25, PageID# 288.) Satterwhite does not make any additional legal argument with respect to this bullet point, but appears to suggest that, to the extent that Ashtabula County lacked the ability to control ACMP's employment decisions (e.g., hiring and firing), Ashtabula County lacked the ability to control certain employment decisions within its own ranks. To the extent Satterwhite implies such an argument in her Opposition, the Court is not persuaded. How Ashtabula County handles employment decisions within its own departments is not probative here because ACMP is a separate entity from Ashtabula County.

jurisdiction of her state law claim and dismiss the state law claim without prejudice, so it may be re-filed in state court.

**IT IS SO ORDERED.**


                                    *s/Pamela A. Barker*
                                    PAMELA A. BARKER
Date:  January 19, 2021               U. S. DISTRICT JUDGE